FILED
2025 Jan-23  PM 01:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

REBEKAH KEITH MCKINNEY,    )
as the Personal Representative of the    )
Estate of Dorothy Carolyn Smith    )
Davidson, Deceased,    )
    )
    Plaintiff,    )
    )
    vs.    )    Case No.  5:23-cv-01578-HNJ
    )
PRINCIPAL FINANCIAL    )
SERVICES, INC., et al.,    )
    )
    Defendants.    )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Rebekah Keith McKinney, who serves as the personal representative of the estate of Dorothy Carolyn Smith Davidson, deceased, filed a Third Amended Complaint asserting claims for payment of plan benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) (Count I), and for equitable relief pursuant to 29 U.S.C. § 1132(a)(3) (Count II), against Defendants Principal Life Insurance Company (Principal or Principal Life) and Davidson Technologies, Inc. (DTI).  (Doc. 35).[1]  DTI answered the Third Amended Complaint (Doc. 41), but Principal moved to dismiss all claims against it.  (Doc. 36).

---

[1] Previous iterations of the Complaint also asserted claims against Principal Financial Services, Inc., and Principal Securities, Inc.  (*See* Doc. 1-1 (Complaint); Doc. 1-2, at 13-26); Doc. 19 (Second Amended Complaint)).  However, due to their omission from the Third Amended Complaint, the court dismissed those Defendants on May 16, 2024.  (Doc. 34).

As discussed more fully herein, Plaintiff may not proceed against Principal as to the 29 U.S.C. § 1132(a)(1)(B) claim, yet it may do so as to the 29 U.S.C. § 1132(a)(3) claim. Accordingly, the court will partially grant Principal's motion to dismiss, and it will dismiss Plaintiff's Count I claim against Principal.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a claim for failure to state a claim upon which the court can grant relief. To assess a motion to dismiss under that rule, courts must first take note of the elements a plaintiff must plead to state the applicable claims at issue. *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).

After establishing the elements of the claims at issue, the court identifies all well-pleaded, non-conclusory factual allegations in the complaint and assumes their veracity. *Id.* at 679. Well-pleaded factual allegations do not encompass mere "labels and conclusions," legal conclusions, conclusory statements, or formulaic recitations and threadbare recitals of the elements of a cause of action. *Id.* at 678 (citations omitted). In evaluating the sufficiency of a plaintiff's pleadings, the court may draw reasonable inferences in the plaintiff's favor. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

Third, a court assesses the complaint's well-pleaded allegations to determine if they state a plausible cause of action based upon the identified claim's elements. *Iqbal*, 556 U.S. at 678. Plausibility ensues "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and the analysis involves a context-specific task requiring a court "to draw on its judicial experience and common sense." *Id.* at 678, 679 (citations omitted). The plausibility standard does not equate to a "probability requirement," yet it requires more than a "mere possibility of misconduct" or factual statements that are "'merely consistent with a defendant's liability.'" *Id.* at 678, 679 (citations omitted).

**ALLEGATIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT**

When Dorothy Davidson died on May 11, 2021, she served as the executive chair of DTI, a corporation her late spouse, Dr. Julian Davidson, founded. (Doc. 35, ¶¶ 7-8). Mrs. Davidson held two 401(k) accounts associated with DTI: (1) an account she received as a benefit of her employment with the company (the "Participant Account"), and (2) an account she received as the beneficiary of her husband's Participant Account upon his death in 2013 (the "Beneficiary Account"). (*Id.* ¶¶ 9-10). Both accounts derived from DTI's 401(k) Plan (the Plan), which the Employee Retirement Income Security Act of 1974 (ERISA) governs.[2] Plaintiff alleges Defendants controlled and managed both accounts. (*Id.* ¶ 11).

Mrs. Davidson designated her nieces, Lisa Binns, Tammy Cason, and Kim Palmer, as beneficiaries of the Participant Account. She did not designate a beneficiary

---

[2] *See* 29 U.S.C. § 1002(2)(A)(i) (extending ERISA coverage to employer-established plans that "provide[] retirement income to employees").

3

for the Beneficiary Account. (*Id.* ¶ 12). The Plan provides: "If there is no Beneficiary named or surviving when a Participant dies, the Participant's Beneficiary shall be the Participant's surviving spouse, or where there is no surviving spouse, the executor or administrator of the Participant's estate for the benefit of the estate." (Doc. 1-3, at 86; Doc. 35, ¶ 12).[3]

On September 1, 2021, DTI's Chief of Staff, Mandy Kerce, informed Principal via email that DTI "did 'not have a beneficiary form signed by Mrs. Davidson for Dr. Davidson's [Beneficiary A]ccount; Therefore, since there is not a surviving spouse, this account will default to the estate.'" (Doc. 35, ¶ 14 (alteration in original)). On September 8, 2021, Principal distributed the proceeds of the Participant Account to Binns, Cason, and Palmer pursuant to a "Death Notification Form" DTI provided indicating Mrs. Davidson designated those individuals as beneficiaries of the account. (*Id.* ¶ 13). On September 9, 2021, Kerce emailed Principal to declare the September 8,

---

[3] Defendants attached a copy of DTI's 401(k) Plan to the Notice of Removal. (Doc. 1-3). Normally, the court may not consider matters outside the pleadings without converting a motion to dismiss into a summary judgment motion and providing the parties an opportunity to submit pertinent material. Fed. R. Civ. P. 12(d). However, an exception exists if "(1) 'the plaintiff refers to certain documents in the complaint,' (2) those documents are 'central to the plaintiff's claim,' and (3) the documents' contents are undisputed." *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1276 (11th Cir. 2023) (citations omitted). Though Plaintiff did not attach a copy of the Plan to any of the iterations of her Complaint, all of those pleadings centrally rely upon the terms of the Plan, and neither party disputes the contents of the Plan documents. Accordingly, the court may rely upon the Plan documents without converting the motion to dismiss into a summary judgment motion. *See Christopherson v. United Healthcare Ins. Co.,* No. 1:21-CV-01611-SDG, 2022 WL 327205, at *2 (N.D. Ga. Feb. 3, 2022) (court in ERISA benefits case properly considered Plan documents attached to a Notice of Removal when the plaintiff "did not dispute removal and has not challenged the authenticity of the Plan attached to the notice of removal").

2021, Death Notification Form "'is only to be used for Mrs. Davidson's [Participant] Account.'" (*Id.* ¶ 15 (alteration in original)).

Despite that directive, Principal transferred the $1,319,757.28 balance in the Beneficiary Account to Mrs. Davidson's nieces on October 27, 2021. Binns and Cason both received $439,875.11, and Palmer received $440,007.06. (*Id.* ¶ 16).

On March 28, 2022, David B. Adams, an employee or agent of Principal, emailed Kerce acknowledging Principal "had received the Death Notification Form and was aware that the Estate believed it was the beneficiary of the Beneficiary Account." (*Id.* ¶ 18). Adams' email also stated "Kerce had clarified that the form applied only to the Participant Account and that, based on that clarification, Principal Life had set up the nieces' accounts from the Participant Account and processed those accounts based on the beneficiary designations." (*Id.* ¶ 19).

The email further conveyed Adams's understanding vis-à-vis the Beneficiary Account:

> When processing the nieces' interests, we understood that the plan would send a separate notification for Ms. Davidson's beneficiary account under the plan received as the beneficiary for Dr. Davidson. As of October 21, 2021, we hadn't received that death notification form, so our processing team reached out to the plan to request the form. We recognize we had some exchanges with you that this form had already been sent a couple times, but our team didn't have the form. We then received the death notification form October 22, 2021. Based on the form, the nieces were designated as beneficiaries of Ms. Davidson's beneficiary account (Dr. Davidson's account) under the plan. We processed that account to the nieces.

(Doc. 35, ¶ 20).

On March 29, 2022, Kerce responded to Principal:

"there was not a 'second death notification' form sent as referenced below in your email.  The one death notification form is the same one that was sent to Principal each time and only referenced Dorothy S. Davidson's death and the beneficiaries to her account as a plan member. . . .  Principal will need to take the necessary steps to retrieve the distribution that was exercised from the Beneficiary of Dr. Davidson's account."

(*Id.* ¶ 21).

On April 8, 2022, Principal responded to Kerce, acknowledging Principal "did not have a death notification form from the plan for the Beneficiary Account"; expressing "'Principal cannot pay the account until we receive this form completed and directing us to pay the estate'"; and indicating Principal "would assume responsibility for asking the nieces to repay the amount that Principal Life mistakenly paid to them from the Beneficiary Account."  (*Id.* ¶ 22).

On April 14, 2022, Kerce

forwarded the Death Notification Form from the plan for the Beneficiary Account and demanded that Principal Life distribute the full amount that should be in the Beneficiary Account to the Estate as the proper beneficiary regardless of whether the money improperly distributed to the nieces was fully recovered from the nieces.

(*Id.* ¶ 23).

On June 29, 2022, Principal sent letters to each of Mrs. Davidson's nieces "stating that '[t]he beneficiary designation that Ms. Davidson made for her participant

account was applied in error to [the Beneficiary Account],' and demanded that the nieces repay the funds disbursed from the Beneficiary Account." (*Id.* ¶ 24 (alterations in original)). As of July 5, 2022, Principal had returned only $372,216.29 to the Beneficiary Account, resulting in a deficit of $947,540.99. (*Id.* ¶ 26).

Plaintiff issued formal demands to DTI, and Plaintiff and DTI both effected formal claims and demands to Principal, to pay the full proceeds of the Beneficiary Account to Mrs. Davidson's estate. Plaintiff asserts that by doing so, she "has exhausted her administrative remedies under the Plan." (Doc. 35, ¶ 27). Principal has neither acknowledged Plaintiff's demands nor provided a formal written denial of Principal's responsibility for its errors. As a result, Plaintiff alleges that "[a]ny further resort to the Claims procedures in the Plan would be futile." (*Id.*).

Plaintiff asserts Principal breached the fiduciary duty it owes Plaintiff as a Plan Beneficiary when it "failed to correct its error and pay" Plaintiff despite acknowledging "it improperly distributed the funds from the Beneficiary Account and failed to pay those funds to the Estate." (*Id.* ¶ 28). Plaintiff further avers "Principal Life has attempted to shift the blame to [DTI], claiming that [DTI] has the legal obligation and responsibility to pay the proceeds of the Beneficiary Account to the Estate and . . . to try to recover the funds mistakenly paid by Principal Life to the nieces." (*Id.* ¶ 29). Plaintiff contends Principal's deflections caused Plaintiff to add DTI as an additional Defendant, despite Plaintiff's belief Principal bears responsibility for paying the

7

remaining funds.  (*Id.*).

Plaintiff asserts Principal acted as a *de facto* Plan Administrator as to Plaintiff's claim to the funds in the Beneficiary Account because it "unilaterally made the erroneous decision to pay the funds to the nieces instead of to Plaintiff, despite instructions to the contrary from [DTI] and despite the express requirements of the Plan."  (*Id.* ¶ 30).

Plaintiff also asserts Principal "acted as a fiduciary when it unilaterally decided to pay the funds in the Beneficiary Account to the nieces instead of to Plaintiff," as that action required the exercise of "discretionary authority or discretionary control respecting the management of the Plan" and "respecting management or disposition of its assets."  (Doc. 35, ¶ 31).

> Further, Principal Life exercised discretionary authority or discretionary responsibility in the administration of the Plan regarding payment of the funds to Plaintiff.  Under the facts and circumstances presented here, Principal Life had the ultimate authority regarding eligibility to the funds in the Beneficiary Account and, in exercising that authority, engaged in more than mere administrative functions and claims administration.

(*Id.*).

For Count I of her Third Amended Complaint, Plaintiff claims she constitutes the proper beneficiary of the funds in the Beneficiary Account.  (*Id.* ¶ 33).  She alleges Defendants "have failed to comply with the terms and conditions of the Plan by failing to promptly pay [the Estate] the funds in the Beneficiary Account," and she asserts a

claim pursuant to 29 U.S.C. § 1132(a)(1)(B) to recover those benefits and to enforce her rights under the terms of the Plan.    (*Id.* ¶¶ 34-35).[4]    Moreover, "[b]ecause Defendants have admitted that they should have paid the funds to the Estate more than a year ago, but have arbitrarily and capriciously failed to do so," Plaintiff requests attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1).[5]    (*Id.* ¶ 36).

For Count II, Plaintiff asserts a claim for equitable relief pursuant to 29 U.S.C. § 1132(a)(3),[6] as "Defendants have breached their fiduciary duties by [arbitrarily and capriciously] failing and refusing to pay the Beneficiary Account funds to the Estate as

---

[4] Title 29 U.S.C. § 1132(a)(1)(B) permits a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."    That provision covers not only situations in which a plan denies an employee's claim for benefits, but also situations, like the current one, when a plan allegedly pays benefits to the wrong beneficiary.  *See, e.g.*, *Quinones v. Sepulveda Perez*, 268 F. Supp. 3d 318, 322 (D.P.R. 2017) ("The conduct forming the basis of Plaintiffs' state law claim – *i.e.*, Prudential's wrongful payment to Sepúlveda – is essentially the same as the conduct that would create an ERISA civil enforcement claim under section 1132."); *Est. of Gonzales v. AAA Life Ins. Co.*, No. CIV 11-0486 JB/WDS, 2012 WL 1132332, at *24-25 (D.N.M. Mar. 28, 2012) (Section 1132(a)(1)(B) preempted state law breach of contract claim based upon payment of plan benefits to the wrong beneficiary); *Sanford v. TIAA-CREF Individual & Institutional Servs., LLC*, No. 2:11-CV-122-KS-MTP, 2012 WL 627994, at *3 (S.D. Miss. Feb. 24, 2012) (ERISA preempted state law claims "premised upon Defendant's alleged . . . wrongful payment of benefits").

[5] Title 29 U.S.C. § 1132(g)(1) provides:  "In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

[6] Title 29 U.S.C. § 1132(a)(3) permits a civil action

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

9

required by the terms of the Plan." (*Id.* ¶ 38).  Plaintiff asserts "[a]n actual and justiciable dispute has arisen regarding whether [DTI] or Principal Life, or both, are liable and responsible to Plaintiff for the funds in the Beneficiary Account," and "[t]his Court should take jurisdiction over this dispute and resolve it with a declaration of the parties' rights and obligations" pursuant to 28 U.S.C. § 2201.[7]  (Doc. 35, ¶ 39).  Plaintiff claims the law entitles her to "an equitable surcharge for Defendants' breaches of fiduciary duty equal to the amount of funds in the Beneficiary Account."  (*Id.* ¶ 40).

## DISCUSSION

In its Motion to Dismiss, Principal argues it does not constitute a proper party-defendant to Plaintiff's ERISA claim for benefits, as it did not operate as the plan administrator or a *de facto* plan administrator; it did not owe Plaintiff a fiduciary duty under ERISA; and Plaintiff did not properly assert a claim for declaratory relief under 29 U.S.C. § 1132(a)(3).  As discussed herein, Principal does not constitute a proper Defendant as to Count I because Plaintiff's Third Amended Complaint does not sufficiently allege Principal operated as a *de facto* Plan Administrator.  As to Count II, Plaintiff sufficiently alleged Principal acted as a fiduciary.  Finally, Plaintiff may maintain

---

[7] Title 28 U.S.C. § 2201(a) provides:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

her requests for declaratory relief pursuant to 29 U.S.C. § 1132(a)(3).

**I.    As Plaintiff's Third Amended Complaint Does Not Sufficiently Allege Principal Operated as a *De Facto* Plan Administrator, the Court Will Dismiss Count I As To Principal**

Principal contends it does not constitute a proper Defendant vis-à-vis Plaintiff's § 1132(a)(1)(B) claim for ERISA benefits in Count I.  Principal does not err in its assessment because the Plan does not designate it as the plan administrator, and the Third Amended Complaint does not sufficiently allege Principal operated as a *de facto* plan administrator vis-à-vis the events at issue.

Any "order enjoining the payment of benefits from an ERISA plan must issue against a party capable of providing the relief requested." *Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888, 908 (11th Cir. 1997) (citations omitted).  Thus, in the Eleventh Circuit, "[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan."  *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997) (citations omitted).

The Plan documents clearly identify DTI, not Principal, as the plan administrator.  The Plan defines "Plan Administrator" as "the person or persons who administer the Plan," then it states "[t]he Plan Administrator is the Primary Employer." (Doc. 1-3, at 24).

In contrast, Principal serves as the "volume submitter practitioner" for the Plan, which establishes DTI adopted a prototype plan created by Principal that the Internal

Revenue Service pre-approved pursuant to 26 U.S.C. § 403. (*Id.* at 2-5, 81-83).[8] *See Pizzella v. Allen*, No. 3:17-CV-784-JRW-CHL, 2020 WL 9720240, at *3 (W.D. Ky. May 14, 2020), *objections sustained sub nom. Walsh v. Allen*, No. 3:17-CV-784-BJB, 2022 WL 256312 (W.D. Ky. Jan. 26, 2022) ("A volume submitter plan is a generic document containing language that has already been reviewed and approved by the IRS and is comprised of an adoption agreement with boxes for the employer to elect key operative provisions and a basic plan document that explains how the employer's elections operate.").

DTI delegated Principal the authority, as the volume submitter, to amend the Plan. (Doc. 1-3, at 82-83). Aside from that authority:

> It is understood that Principal Life Insurance Company is not a party to the Plan and shall not be responsible for any tax or legal aspects of the Plan. The Primary Employer assumes responsibility for these matters. The obligations of Principal Life Insurance Company shall be governed solely by the provisions of its contracts and policies. Principal Life Insurance Company shall not be required to look into any action taken by the Plan Administrator, Named Fiduciary, Trustee, Investment Manager, or the Primary Employer and shall be fully protected in taking, permitting or omitting any action on the basis of the Primary Employer's actions. Principal Life Insurance Company shall incur no liability or responsibility for carrying out actions as directed by the Plan Administrator, Named Fiduciary, Trustee, Investment Manager or the

---

[8] The Internal Revenue Service ("IRS") provides for volume submitter plans in Rev. Proc. 2011-49, 2011-44 I.R.B. 608 (2011), and Rev. Proc. 2015-36, 2015-27 I.R.B. 1234 (2015). Beginning in 2017, the IRS combined volume submitter plans with other plans into a single type of pre-approved plan. Rev. Proc. 2017-41, 2017-29 I.R.B. 92 (2017). However, the IRS permitted volume submitter plans already in effect to remain in place until their regular six-year cycle completed; such specification likely explains the reason DTI's Plan refers to volume submitter plans even though it dates after the 2017 regulatory amendments. (Rev. Proc. 2017-41, § 9.02).

Primary Employer.

(*Id.* at 95).

Despite these designations in the Plan, Plaintiff asserts Principal acted as a *de facto* Plan Administrator and retained sufficient decisional control over the claims process to face liability for the wrongful distribution of the Beneficiary Account funds to Binns, Cason, and Palmer. "Proof of who is the plan administrator may come from the plan document, but can also come from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document." *Hamilton v. Allen-Bradley Co.*, 244 F.3d 819, 824 (11th Cir. 2001) (citing *Rosen v. TRW, Inc.,* 979 F.2d 191, 193 (11th Cir. 1992)). The assessment centers upon whether the entity "had sufficient decisional control over the claim process that would qualify it as a plan administrator," an inquiry that "requires an analysis of the facts surrounding the administration of the disability plan." *Id.*

If an entity exercises such control, despite a plan not naming it as plan administrator, courts may deem the entity a "*de facto* plan administrator" capable of providing for the payment of ERISA benefits. *See, e.g., Oliver v. Coca Cola Co.*, 497 F.3d 1181, 1193-95 (11th Cir.), *reh'g granted, opinion vacated in part*, 506 F.3d 1316 (11th Cir. 2007), and *adhered to in part on reh'g*, 546 F.3d 1353 (11th Cir. 2008). Principal argues the *de facto* plan administrator designation does not apply to third-party administrators who administer plans pursuant to agreements with plan administrators. And to be sure,

13

some decisions declare such a holding. *See e.g.*, *Prolow v. Aetna Life Ins. Co.*, No. 20-80545-CIV, 2021 WL 8566764, at *5 & n.4 (S.D. Fla. Oct. 13, 2021) (collecting cases) ("Since *Oliver*, district courts have diverged on whether *Oliver* means claims administrators, as a matter of law, can never be considered a *de facto* plan administrator when the plan names a different entity as the plan administrator, or whether *Oliver* instead leaves an open question on whether a third party claims administrator could function as *de facto* administrator depending on the extent of its decision-making authority – a fact-intensive inquiry not properly resolved by way of a motion to dismiss."); *Gardi v. United Healthcare Servs., Inc.*, 437 F. Supp. 3d 1188, 1199 (S.D. Fla. 2020) ("[A]s a third-party administrator, United cannot be held liable under the *de facto* administrator doctrine . . . ."); *E.G. by & through R.G. v. Companion Benefit Alternatives, Inc.*, No. CV 18-0265-WS-MU, 2018 WL 4623653, at *5 (S.D. Ala. Sept. 26, 2018) ("The *Oliver* line of cases stands for the proposition that third-party administrative service providers . . . are not eligible for application of the *de facto* plan administrator doctrine.").

However, Eleventh Circuit precedent does not limit the *de facto* plan administrator doctrine in such a fashion. In *Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888 (11th Cir. 1997), the plaintiff sought benefits from a retirement plan sponsored by his bankrupt employer, Eastern Air Lines. The retirement plan designated Eastern as the plan administrator, yet Eastern designated an entity entitled the Trust Administrative Committee (TAC) as its "named fiduciary" to "monitor[] the management of the Plan's

14

assets." *Id.* at 893. During the bankruptcy proceedings, the TAC's role as a named fiduciary evolved to include only administration of periodic-payment and loan options for plan participants and beneficiaries. *Id.* at 914. The pertinent cross-appeal concerned whether TAC failed to provide requested information to the plaintiff in violation of § 502(c) of ERISA (29 U.S.C. § 1132(c)(1)), which by its provisions only applies to plan administrators.[9] After reviewing the *de facto* plan administrator doctrine, the Court discerned the TAC retained authority only over the periodic-payment and loan options, and thus, it did not operate as a *de facto* plan administrator given this limited authority. *Id.* at 915. Notably, of course, the Court rejected TAC as a *de facto* administrator because the facts regarding its authority did not support its designation as such. That is, TAC was not the plan administrator, yet that fact did not play a role in the Court's decision.[10]

---

[9] Title 29 U.S.C. § 1132(c)(1) provides as follows:

> Any administrator (A) who fails . . . or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

[10] Principal may contend the decision in *Hunt v. Hawthorn Assocs., Inc.*, 119 F.3d 888 (11th Cir. 1997), cannot serve as applicable precedent because it involved a different provision in ERISA, *i.e.*, § 1132(c)(1) rather than § 1132(a)(1)(B). However, Eleventh Circuit decisions elucidating the contours of the *de facto* plan administrator doctrine as to § 1132(a)(1)(B) claims rely upon a First Circuit decision — *Law v. Ernst & Young*, 956 F.2d 364, 372-74 (1st Cir. 1992) — which deployed the doctrine vis-à-vis a § 1132(c)(1) claim. *See Oliver v. Coca Cola Co.*, 497 F.3d 1181, 1195 (11th Cir.), *reh'g granted, opinion vacated in part*, 506 F.3d 1316 (11th Cir. 2007), and *adhered to in part on rehg*, 546 F.3d 1353 (11th Cir. 2008); *Hamilton v. Allen-Bradley Co.*, 244 F.3d 819, 824 (11th Cir. 2001); *Rosen v. TRW, Inc.*, 979 F.2d 191, 193 (11th Cir. 1992).

Nevertheless, Eleventh Circuit precedent provides that a third-party administrator cannot function as a *de facto* plan administrator when the actual plan administrator retains the final authority as to eligibility for benefits:

> [W]here a plaintiff has sought to hold a third-party administrative services provider liable, rather than the employer, we have rejected the *de facto* plan administrator doctrine. *See Baker v. Big Star Div. of the Grand Union Co.,* 893 F.2d 288 (11th Cir. 1989). In *Baker,* an employer had established an ERISA disability benefits plan, and contracted with Connecticut General Life Insurance to administer claims, though, as here, the employer "reserved the right to review any and all claim denials." *Id.* at 290. An employee submitted a claim for benefits under the plan, and Connecticut General denied the claim. *Id.* Baker was informed of his right to appeal the initial benefits decision, but instead brought suit in state court claiming that Connecticut General improperly denied his claim. *Id.* The case was removed to federal court, and the district court ruled in favor of Connecticut General, basing its decision in part on the determination that Connecticut General was not an ERISA fiduciary and could not be held liable under ERISA for its handling of Baker's claim. *Id.*
>
> We affirmed, holding that "[the employer] did no more than 'rent' the claims processing department of Connecticut General to review claims and determine the amount payable 'in accordance with the terms and conditions of the Plan.'" *Id.* (citing the provisions of the plan). We held that Connecticut General "[did] not become an ERISA 'fiduciary' simply by performing administrative functions and claims processing within a framework of rules established by an employer," *particularly in light of the fact that the employer made the final determination as to eligibility. Id.* (citations omitted). . . .
>
> The First Circuit, which also recognizes the *de facto* administrator doctrine in some contexts, *see Law v. Ernst & Young,* 956 F.2d 364, 372-73 (1st Cir. 1992), has also declined to apply the *de facto* administrator doctrine to a third party administrative services provider in circumstances similar to those here. *See Terry v. Bayer Corp.,* 145 F.3d 28, 35 (1st Cir.1998) ("*[W]hen the plan administrator retains discretion to decide disputes,* a third party service provider, such as Northwestern, is not a fiduciary of the plan, and thus

16

not amenable to a suit under [ERISA].") (citations omitted). Because Broadspire is merely an administrative services provider, *and because, under the Plan, Coca-Cola, through the Committee – not Broadspire – makes the final decision on benefits claims,* we are bound by *Baker* to hold that Coca-Cola is the plan administrator. *See Baker,* 893 F.2d at 289-90.

*Oliver,* 497 F.3d at 1194-95 (emphasis added, alterations in original). *See also Smiley v. Hartford Life & Acc. Ins. Co.,* 610 F. App'x 8, 8-9 (11th Cir. 2015) ("We have consistently rejected the use of the *de facto* plan administrator doctrine 'where a plaintiff has sought to hold a third-party administrative services provider liable, rather than the employer.' As in *Oliver,* the record demonstrates that Smile Brands *retained the authority to make final decisions on appeal from the claims administrator* . . . ." (quoting *Oliver,* 497 F.3d at 1194) (emphasis added)); *Smith v. Blue Cross Blue Shield of S.C.,* No. 3:18-CV-960-J-JRK, 2020 WL 1288650, at *4 (M.D. Fla. Mar. 18, 2020) (collecting cases) ("[I]n cases in which the employer has delegated to a third-party administrative services provider its full discretion over benefit claims decisions, courts have found the third-party services provider to be a proper defendant, rather than the employer.") (emphasis omitted); *Watson v. Paul Revere Life Ins. Co.,* No. 11-21492-CIV, 2011 WL 13223670, at *5 (S.D. Fla. Aug. 15, 2011) ("The court's holding in *Oliver* did not preclude non-designated claim administrators from liability; rather, it pointedly stated that the *de facto* administrator doctrine does not apply to administrative services providers where the employer makes final determinations of liability and sets forth the framework for administering the policy."); *Kirkland v. Blue Cross & Blue Shield of Alabama,* No. 2:08-CV-

1770-JHH, 2009 WL 10703729, at *7 (N.D. Ala. Nov. 20, 2009) ("The *Baker* line of cases . . . does not establish with certainty that the *de facto* analysis fails to apply in the instant case. . . .   [C]ases from other circuits have extended *Baker*'s reasoning to situations where the third party maintains discretion in deciding claims.").

Therefore, in the Eleventh Circuit the *de facto* plan administrator doctrine turns on whether a designated plan administrator retains final authority on benefits claims. That is, although a plan's designation of a plan administrator may not be dispositive vis-à-vis the authority of the designee, Eleventh Circuit precedent provides that a plan may definitively confer plan-administrator status upon a named entity vis-à-vis the level of discretionary authority it affords the entity.

In this case, the record clearly portrays DTI retains final authority on benefits claims:

> Subject to the provisions of this article, the Plan Administrator has *complete control* of the administration of the Plan.  The Plan Administrator has all the powers necessary for it to properly carry out its administrative duties.  Not in limitation, but in amplification of the foregoing, *the Plan Administrator has complete discretion* to construe or interpret the provisions of the Plan, including ambiguous provisions, if any, and *to determine all questions that may arise under the Plan, including all questions relating to* the eligibility of Employees to participate in the Plan and *the amount of benefit to which any Participant, Beneficiary, spouse, or Contingent Annuitant may become entitled.  The Plan Administrator's decisions upon all matters within the scope of its authority shall be final.*

(Doc. 1-3, at 77 (emphasis added)).[11]

Therefore, the Third Amended Complaint does not contain sufficient allegations to support the assertion Principal operated as a *de facto* Plan Administrator when it made payments from Mrs. Davidson's Beneficiary Account. Plaintiff's § 1132(a)(1)(B) claim warrants dismissal in this regard.

## II. Plaintiff's Third Amended Complaint Sufficiently Alleges Principal Owed Plaintiff a Fiduciary Duty Under ERISA, and Principal Breached That Duty.

Plaintiff's Count II asserts a claim for equitable relief pursuant to 29 U.S.C. § 1132(a)(3), which permits a civil action

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms

---

[11] To be sure, there exist other Plan terms that may provide a more solid basis for deeming Principal a *de facto* plan administrator:

> The Employer, Plan Administrator, and any other person or entity who has authority with respect to the management, administration, or investment of the Plan may exercise that authority in its/his full discretion, subject only to the duties imposed under ERISA. This discretionary authority includes, but is not limited to, the authority to make any and all factual determinations and interpret all terms and provisions of the Plan documents relevant to the issue under consideration. The exercise of authority will be binding upon all persons.

(Doc. 1-3, at 79-80). The foregoing terms may apply to Principal if it constitutes an entity with authority to manage or administer the Plan, and thus, in its "full discretion," may act subject only to ERISA with such authority "binding upon all persons" (and the Plan's definition section denominates the Plan Administrator as a "person" (*Id.* at 24)). Yet Plaintiff did not lodge any contention as to the foregoing Plan terms, and the Third Amended Complaint does not contain any averments expressly relying upon them as to Principal's authority. If discovery yields a basis for applying the *de facto* plan administrator doctrine to Principal based upon those terms, then Plaintiff and/or DTI may seek to amend the pleadings accordingly.

of the plan.

29 U.S.C. § 1132(a)(3).  A participant or beneficiary may rely upon this provision to assert a claim for fiduciary duty, as "ERISA obligates a fiduciary to 'discharge his duties with respect to the plan solely in the interest of the participants and beneficiaries.'" *Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1206 (11ᵗʰ Cir. 2020) (quoting 29 U.S.C. § 1104(a)(1)) (emphasis omitted); *see also Gimeno v. NCHMD, Inc.*, 38 F.4th 910, 914-15 (11ᵗʰ Cir. 2022) ("[E]very circuit court to address the issue has recognized that Section 1132(a)(3) creates a cause of action for monetary relief for breaches of fiduciary duty. . . . We reach the same conclusion here.").

"To establish liability for a breach of fiduciary duty under any of the provisions of ERISA § 502(a), a plaintiff must first show that the defendant is in fact a fiduciary with respect to the plan."  *See Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1277 (11ᵗʰ Cir. 2005) (citing *Baker*, 893 F.2d at 289).  Under ERISA,

> a person[12] is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

---

[12] Under ERISA, "[t]he term 'person' means an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization."  29 U.S.C. § 1002(9).

29 U.S.C. § 1002(21)(A).

"Proof of fiduciary status 'may come . . . from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document.'" *Gimeno*, 38 F.4th at 915 (quoting *Hamilton*, 244 F.3d at 824). As the existence of an ERISA fiduciary presents "a mixed question of law and fact," *Cotton*, 402 F.3d at 1277, courts often express reluctance to resolve a party's fiduciary status on the pleadings alone. *See Pledger v. Reliance Tr. Co.*, 240 F. Supp. 3d 1314, 1324 (N.D. Ga. 2017) ("Other courts subsequent to the *Twombly/Iqbal* standard of review also have been hesitant to resolve breach of fiduciary claims under ERISA due to a purported lack of fiduciary status at the motion to dismiss stage, particularly where, as here, the plaintiffs allege the various defendants are interrelated." (citing *Gedek v. Perez*, 66 F. Supp. 3d 368, 383 (W.D. N.Y. 2014); *Jump v. Speedway LLC*, 23 F. Supp. 3d 1024, 1031 (D. Minn. 2014); *Groussman v. Motorola, Inc.*, No. 10 C 911, 2011 WL 147710, at *4 (N.D. Ill. Jan. 18, 2011); *Feamster v. Mountain State Blue Cross & Blue Shield, Inc.*, No. 6:10-cv-241, 2010 WL 2854302, at *3-4 (S.D.W. Va. July 19, 2010)); *Eslava v. Gulf Tel. Co.*, 418 F. Supp. 2d 1314, 1322 (S.D. Ala. 2006) (expressing reluctance to resolve the "fact-intensive inquiry" of a defendant's fiduciary status "at the infant stage of litigation" when "no discovery ha[d] been conducted") citing *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 470 (S.D. N.Y. 2005); *In re AEP Erisa Litig.*, 327 F. Supp. 2d 812, 827 (S.D. Ohio 2004); *In re Xcel Energy, Inc., Sec.,*

*Derivative & "ERISA" Litig.*, 312 F. Supp. 2d 1165, 1180-81 (D. Minn. 2004); *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1227 (D. Kan. 2004)).

The factual allegations of the Third Amended Complaint plausibly aver Principal assumed a fiduciary status vis-à-vis the benefits claim at issue, as such averments demonstrate Principal did more than just process claims and perform administrative functions within a framework of rules DTI established.  Plaintiff asserts Principal paid the Beneficiary Account benefits to Mrs. Davidson's nieces despite not receiving a Death Notification Form for that account.  Even more to the point, Plaintiff alleges Principal paid those benefits in contradiction of DTI's express direction that the only Death Notification Form in Principal's possession applied exclusively to the Participant Account.  (Doc. 35, ¶¶ 14-16, 18-21).  Those allegations – particularly the alleged facts demonstrating Principal contravened DTI directives and failed to correct the alleged erroneous distribution to the nieces – suggest Principal exercised an inclination to issue payment independently of, or even contrary to, DTI's direction.  That is, the averments suggest a level of discretionary authority or control as to management of the Plan or its assets.  The averments do not depict Principal performed purely ministerial functions in this regard.  *See Carolinas Electrical Workers Retirement Plan v. Zenith American Solutions, Inc.*, 658 F. App'x 966, 969 (11th Cir. 2016) ("A third-party administrator that performs purely ministerial functions, such as calculating benefits, maintaining participant records, and communicating with participants, is not a fiduciary within the meaning of

22

29 U.S.C. § 1002(21)(A)." (citing 29 C.F.R. § 2509.75-8 (D-2); *Cotton*, 402 F.3d at 1279 (holding insurer's allocation of premium payments, analysis of policy performance, and communications with participants constituted "ministerial policy-related services" that did not "render [the insurer] a fiduciary"); *Baker*, 893 F.2d at 290 ("[A] plan administrator who merely performs claims processing, investigatory, and record keeping duties is not a fiduciary"))).

As Plaintiff and DTI revealed, a decision by the United States District Court for the District of New Mexico in *Est. of Gonzales v. AAA Life Ins. Co.*, No. CIV 11-0486 JB/WDS, 2012 WL 1132332 (D. N.M. Mar. 28, 2012), presents somewhat analogous circumstances.  In the case, MetLife, an insurer and plan administrator,  paid ERISA benefits to the wrong beneficiary.  Even in the absence of any allegations MetLife exercised discretionary authority, the district court found MetLife acted as an ERISA fiduciary because it exercised "authority or control respecting . . . disposition" of plan assets, pursuant to 29 U.S.C. § 1002(21)(A)(i), by issuing payment under the plan.  *Id.* at *21; *see id.* at *22 ("No discretionary authority is required under this portion of 29 U.S.C. § 1002(21)(A)(i), because MetLife had control over the disposition of the funds at issue.").  Though *Gonzalez* presents only non-binding authority, its reasoning persuades the court.  As in *Gonzalez*, the fact that Principal issued payment indicates, at least at the pleading stage, that it exercised authority or control over the disposition of

Plan assets.[13]

Principal contends only DTI could act in a fiduciary capacity, as the Plan documents designated DTI as the Plan Administrator and awarded DTI "complete control of the administration of the Plan," including the duty to "determine all facts necessary to establish the right of any Claimant to benefits and the amount of those benefits under the provisions of the Plan." (Doc. 1-3, at 77). Moreover, Principal asserts it lacked discretion to issue any payment without a Death Notification Form from DTI.

However, the statutory definition of a fiduciary does not require that a fiduciary also serve as a plan administrator. Rather, a fiduciary encompasses not only an entity that exercises discretionary authority or responsibility in the *administration* of a Plan, but also an entity that exercises discretionary authority or control over the *management* of the Plan, or an entity that exercises *any* authority or control over the *management or disposition*

---

[13] Principal attempts to distinguish *Gonzalez* on the ground that "MetLife in that case was undisputedly the claims administrator that paid claims under its life insurance policy," and "[t]here was no dispute that MetLife had authority and control over the disposition of the ERISA plan benefits in that case, as it was making the final determination of whether it would pay benefits out of its own assets." (Doc. 54, at 3-4). However, the *Gonzalez* decision clearly declared that beyond the "allegation that MetLife was the plan administrator, there are various other allegations supporting the conclusion that MetLife was a fiduciary." *Gonzales.*, 2012 WL 1132332, at *20. Subsequently, the decision assessed whether MetLife "exercised any authority or control respecting management or disposition of the life insurance assets under the ERISA plan, regardless whether it was formally designated as a fiduciary." *Id.* at *21. The decision concluded MetLife served as a fiduciary because it "'negligently and grossly negligently failed to pay life insurance benefits to the legal beneficiary,'" and it did not matter "whether MetLife had any discretion where to send the funds." *Id.* at 22. That conclusion renders *Gonzalez* sufficiently analogous to the current case to provide persuasive authority.

*of Plan assets.* *See* 29 U.S.C. § 1002(21)(A). As already asserted, the Third Amended Complaint plausibly avers Principal fits the bill in the foregoing regards.

And of course, Plaintiff secures access to an equitable remedy under § 1132(a)(3) for Principal's alleged breach of fiduciary duty. Though § 1132(a)(3) generally excludes claims for money damages, it permits requests for "equitable surcharge – an order that a trustee compensate a trust beneficiary for a loss due to a breach of fiduciary duty," as such a "remedy – as between a trust beneficiary and a trust fiduciary – is 'equitable in character and enforceable against [a] trustee[] in a court exercising equity powers.'" *Gimeno*, 38 F.4th at 914 (citations omitted) (alterations in original). Therefore, "Section 1132(a)(3) allows an ERISA beneficiary to sue an ERISA fiduciary for" equitable surcharge. *Id.*

For the foregoing reasons, the Third Amended Complaint sufficiently alleges that Principal acted as an ERISA fiduciary. It also sufficiently alleges Principal breached its fiduciary duty "by failing and refusing to pay the Beneficiary Account funds to the Estate." (Doc. 35, ¶ 38).

## III. Plaintiff May Maintain Her Requests for Declaratory Relief Pursuant to 29 U.S.C. § 1132(a)(3).

Principal also argues Plaintiff's request for declaratory relief fails "[t]o the extent [it] is intended as separate from the claim for breach of fiduciary duty," as "[a] claim under the Declaratory Judgment Act regarding rights and obligations under an ERISA

plan is legal, not equitable, relief and therefore is not available under § 1132(a)(3)." (Doc. 36-1, at 8-9). Nor, says Principal, "is such a claim a proper alternative to the declaratory relief expressly provided by ERISA in 29 U.S.C. § 1132(a)(1)(B)." (*Id.* at 9).

As an initial matter, Plaintiff's Third Amended Complaint does not definitively assert a declaratory judgment claim separate from the breach of fiduciary duty claim. Rather, the pleading appears to raise declaratory judgment and equitable surcharge as means of redressing the alleged breach of fiduciary duty. (*See* Doc. 35, ¶¶ 40(c) (requesting the court to "enter a declaratory judgment that Plaintiff is entitled to the funds from the Beneficiary Account and declaring which of the Defendants is liable and responsible for the payment of those funds to Plaintiff"); 40(d) (requesting the court to "award Plaintiff an equitable surcharge of the amount of funds from the Beneficiary Account")). Eleventh Circuit authority permits Plaintiff's request for a declaratory judgment under these circumstances.

The Eleventh Circuit's decision in *Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520 (11th Cir. 1987), reflects the propriety of Plaintiff's request for declaratory relief pursuant to the Declaratory Judgment Act and § 1132(a)(3). As recounted in the *Arnold* decision, Gulf Life Insurance Company, an ERISA fiduciary, filed "a declaratory judgment action seeking to determine its liability for benefits claimed by a former employee who was a participant in the fiduciary-employer's ERISA-qualified employee benefit plan." *Arnold*, 809 F.2d at 1522. Gulf Life denied employee/participant Arnold's claim for

severance benefits, and before Arnold could sue for benefits in Tennessee, where he lived, Gulf Life filed a declaratory judgment action in federal district court in Florida, where it maintained its principal place of business and administered the benefits plan. *Id.* Gulf Life invoked ERISA's liberal venue provision, which permits suit "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found," and permits nationwide service of process for any suit arising "under [the subchapter of ERISA encompassing § 1132]." *Id.* at 1523.

To determine whether the broad ERISA venue provision applied, the Eleventh Circuit assessed whether Gulf Life's declaratory judgment suit arose under ERISA § 502(a)(3), *i.e.,* whether the suit requested "other appropriate equitable relief . . . to enforce any provisions of this subchapter or the terms of the plan." *Id.*; *see also* 29 U.S.C. § 1193(a)(3). As a declaratory judgment action persists as "neither inherently legal nor equitable in nature," the Court "'examined the basic nature of the issues involved to determine how they would have arisen had Congress not enacted the Declaratory Judgment Act.'" *Arnold*, 809 F.2d at 1523 (citations omitted). Under that assessment, Gulf Life's declaratory judgment claim did not request equitable relief, because, without the Declaratory Judgment Act, "the only way [the claim] could have arisen is as a suit by Arnold to collect the severance pay he claims he is due – a legal, not equitable, action," *i.e.*, a § 1132(a)(1)(B) claim. *Id.* Therefore, the nature of the putative coercive

action underlying a request for declaratory relief denotes the character of such relief vis-à-vis an ERISA § 1132(a)(1)(B) claim.

In the present case, the underlying coercive claim at issue constitutes a § 1132(a)(3) demand for equitable relief. As discussed, § 1132(a)(3), which permits only injunctive and other equitable relief,[14] "creates a cause of action for monetary relief for breaches of fiduciary duty." *Gimeno*, 38 F.4th at 914-15. That is, "the basic nature of the issues involved" depict Plaintiff's breach of fiduciary duty claim, and the remedies she seeks for the claim, sound in equity. *Arnold*, 809 F.2d at 1523. Accordingly, the *Arnold* decision does not prohibit Plaintiff's request for declaratory relief vis-à-vis the § 1132(a)(3) claim. *C.f.*, *Admin. Comm. v. Merritt*, No. 5:01-CV-26-C (CAR), 2003 WL 23213577, at *5 (M.D. Ga. May 9, 2003) (dismissing § 1132(a)(3) claim by plan fiduciary because "but for the Declaratory Judgment Act, the only way [the] action could [have arisen] is as a suit by [the plan fiduciary] to collect the money it claims it is owed under the reimbursement clause of the ERISA plan, [which constitutes] a claim that [the beneficiary] is contractually obligated to [the plan fiduciary] – a legal, not equitable, claim.").

Principal contends some courts have construed other aspects of the *Arnold* decision to hold that litigants may not seek declaratory relief pursuant to § 1132(a)(3).

---

[14] Undisputedly, Plaintiff has not requested injunctive relief pursuant to 29 U.S.C. §1132(a)(3)(A).

*See Martinez v. Miami Children's Health Sys., Inc.*, No. 21-CV-22700, 2022 WL 3577084, at *4 & n.3 (S.D. Fla. Aug. 19, 2022) (ruling "the Eleventh Circuit's interpretation of ERISA in *Arnold* would preclude a [Declaratory Judgment Act] claim" by a fiduciary because "'the language of section 1132(a)(1) [depicts] Congress limited [declaratory relief] actions solely to participants and beneficiaries . . . .'") (quoting *Arnold*, 809 F.3d at 1524) (citing *Publix Super Markets, Inc. v. Figareau*, No. 8:19-cv-545-T-27AEP, 2019 WL 6311160, at *1, 5-6 (M.D. Fla. Nov. 25, 2019) (dismissing claim for declaratory relief based on Declaratory Judgment Act in ERISA case as redundant and unnecessary, where relief sought requested that the court construe the plan to determine participant/beneficiary rights)). Essentially, Principal argues that § 1132(a)(1)'s explicit provision for declaratory relief precludes the availability of such relief under § 1132(a)(3). An appropriate review reveals *Arnold* does not sweep so broadly.

As recounted previously, in *Arnold* the ERISA fiduciary, not a plan participant or beneficiary, requested the declaratory judgment pursuant to § 1132(a)(3). *Arnold,* 809 F.2d at 1524. Section 1132(a)(1) explicitly provides for declaratory relief (*i.e.*, the ability to "clarify . . . rights to future benefits under the terms of the plan), yet it permits claims only by participants and beneficiaries. Therefore, the *Arnold* decision discerned that interpreting § 1132(a)(3) as also granting fiduciaries the right to request declaratory relief would impermissibly render § 1132(a)(1) meaningless vis-à-vis claims seeking a determination of benefits. *Id.* In addition, the Eleventh Circuit found prohibiting a

fiduciary from asserting a declaratory judgment action pursuant to § 1132(a)(3) would further ERISA's stated purpose of providing court access to participants and beneficiaries.  *Id.*  To permit such actions would allow insurers and fiduciaries an unintended advantage, as the insurer could control the venue of the litigation by filing a declaratory judgment action in a favorable federal venue anytime it intended to deny a participant's or beneficiary's claim.  *Id.* at 1525 ("Were we to adopt Gulf Life's view, the sword that Congress intended participants/beneficiaries to wield in asserting their rights could instead be turned against those whom it was designed to aid.").

As reflected, the *Arnold* decision determined that § 1132(a)(1) claims for an alleged wrongful denial of plan benefits should proceed via participants or beneficiaries filing a § 1132(a)(1)(B) coercive cause of action or request for declaratory relief, not via a fiduciary's § 1132(a)(3) claim for a declaratory judgment.  Plaintiff's § 1132(a)(3) declaratory relief claim against Principal does not incite the foregoing concerns because she pursues her entreaty in the guise of a beneficiary, not a fiduciary, and she seeks equitable relief, not benefits, under the plan at issue.

And in any event, to the extent *Arnold* broadly postulates that fiduciaries may not seek declaratory relief under § 1132(a)(3)((B), such a provision contravenes express Supreme Court precedent.  *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 26-27 (1983) ("Under § 502(a)(3)(B) of ERISA, a participant, beneficiary, or fiduciary of a plan covered by ERISA may bring a declaratory

judgment action in federal court" as appropriate to the circumstances); *see also id.* at 27 n.31 ("Section 502(a)(3)(B) of ERISA has been interpreted as creating a cause of action for a declaratory judgment." (citing *Cutaiar v. Marshall,* 590 F.2d 523, 527 (3d Cir. 1979)).

## CONCLUSION AND ORDER

In accordance with the foregoing, the court **PARTIALLY GRANTS** Principal's motion to dismiss. Plaintiff may not proceed against Principal as to the 29 U.S.C. § 1132(a)(1)(B) claim, yet she may do so as to the 29 U.S.C. § 1132(a)(3) claim, and she may maintain her requests for declaratory judgment. Accordingly, the court dismisses Plaintiff's Count I claim against Principal.

The court **LIFTS** the stay on discovery. The parties shall file a revised report pursuant to Federal Rule of Civil Procedure 26(f) within thirty (30) days of the date of this order.

**DONE** and **ORDERED** this 23rd day of January, 2025.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE