UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

REBEKAH KEITH MCKINNEY,  )
as the Personal Representative of the  )
Estate of Dorothy Carolyn Smith  )
Davidson, Deceased,  )
    )
       Plaintiff,  )
    )
    vs.  )    Case No.  5:23-cv-01578-HNJ
    )
PRINCIPAL FINANCIAL  )
SERVICES, INC., et al.,  )
    )
       Defendants.  )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Rebekah Keith McKinney, who serves as the personal representative of the Estate of Dorothy Carolyn Smith Davidson (the Estate), asserts claims for relief under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq*., against Defendants Principal Life Insurance Company (Principal or Principal Life) and Davidson Technologies, Inc. (DTI). (Doc. 35). DTI filed a motion for leave to a third-party complaint. (Doc. 62). Principal supports the motion (Doc. 66), but Plaintiff opposes it. (Doc. 65). As discussed herein, the proposed third-party complaint satisfies the requirements of Federal Rule of Civil Procedure 14, and all relevant discretionary factors weigh in favor of allowing the third-party complaint. Accordingly, the court will **GRANT** DTI's motion and allow the filing of the third-party complaint.

## PROCEDURAL BACKGROUND

Prior to her death, Mrs. Davidson received the proceeds of her husband's ERISA-governed 401(k) account associated with his DTI employment (the "Beneficiary Account"). Upon Mrs. Davidson's death, DTI's 401(k) Plan distributed the Beneficiary Account funds to her three nieces, Lisa Binn, Tammy Cason, and Kim Palmer, though the Plan allegedly should have distributed the account funds to the Estate because Mrs. Davidson did not designate her nieces as beneficiaries of that account.[1] The Estate seeks to recover those funds from DTI pursuant to 29 U.S.C. § 1132(a)(1)(B), and from both Principal and DTI pursuant to 29 U.S.C. § 1132(a)(3).

Plaintiff originally filed suit on October 23, 2023, in the Circuit Court of Madison County, Alabama, asserting state law claims against Principal and two other related entities. (Doc. 1-1).[2] On November 8, 2023, Plaintiff amended her state court complaint. (Doc. 1-2, at 13-26). On November 21, 2023, Principal removed the case to this court due to ERISA preemption of the state law claims. (Doc. 1). On January 25, 2024, Plaintiff filed a Second Amended Complaint in this court (Doc. 19), and on

---

[1] Mrs. Davidson designated her nieces as the beneficiaries of a separate 401(k) account she held due to her own employment at DTI. No party contests their entitlement to the proceeds of that account.

[2] Previous iterations of the Complaint also asserted claims against Principal Financial Services, Inc., and Principal Securities, Inc. (*See* Doc. 1-1 (Complaint); Doc. 1-2, at 13-26); Doc. 19 (Second Amended Complaint)). However, due to their omission from the Third Amended Complaint, the court dismissed those Defendants on May 16, 2024. (Doc. 34).

May 16, 2024, she filed a Third Amended Complaint.  (Doc. 35).  The Third Amended Complaint added DTI as a Defendant.  (*Id.*).

On May 30, 2024, Principal moved to dismiss the Third Amended Complaint. (Doc. 36).  On July 15, 2024, DTI waived service of the Third Amended Complaint (Doc. 40), and it answered that pleading on September 13, 2024.  (Doc. 41).  On January 23, 2025, the court partially granted Principal's motion to dismiss, leaving only Plaintiff's § 1132(a)(1)(B) claim against DTI, and Plaintiff's § 1132(a)(3) claim against both Principal and DTI.  (Doc. 55).  On February 13, 2025, after receiving an extension of the pertinent deadline, Principal answered the Third Amended Complaint.  (Doc. 60).

On February 24, 2025, the parties filed a report of Rule 26(f) planning meeting, in which they proposed that "Plaintiff shall have until thirty days after the close of discovery to join any additional parties and/or amend the pleadings."  (Doc. 61, at 7, ¶ 5(b)).  Later on February 24, 2025, DTI filed the instant motion for leave to file a third-party complaint.  (Doc. 62).  On February 25, 2025, the court entered a scheduling order setting a discovery deadline of August 11, 2025, setting a dispositive motion deadline of September 10, 2025, and stating:  "No party may add causes of action, defenses, or parties later than thirty (30) days after the close of discovery."  (Doc. 64, ¶¶ 1, 2, 4(b)).

**ALLEGATIONS OF PROPOSED THIRD-PARTY COMPLAINT**

DTI's proposed third-party complaint seeks to assert claims against Tammy

3

Cason and Kim Palmer for restitution and unjust enrichment pursuant to 29 U.S.C. §

1132(a)(3).  (Doc. 67, at 11-15).[3]  DTI alleges:

> 18.  ERISA allows a Plan fiduciary, such as the Plan Administrator, to bring suit for appropriate equitable relief to enforce the terms of the Plan.

> 19.  Under the terms of the Plan, the funds in the Beneficiary Account were payable to the Estate.

> 20.  Third-Party Defendants are not entitled to retain the funds paid to them from the Beneficiary Account, they have no lawful claim to those funds, and their acceptance and retention of those funds would violate established principles of fairness and equity.

> 21.  As a result, Third-Party Defendants have been unjustly enriched in the amounts that each received from the Beneficiary Account but has not returned.

> 22.  Therefore, DTI, as Plan Administrator on behalf of the Plan, is either entitled to restitution from Third-Party Defendants of those funds paid to them, or Third-Party Defendants should be required to pay those funds to the Estate, either directly or through reimbursement or restitution to the Plan.

> 23.  Alternatively, an equitable lien and/or constructive trust should be imposed upon the funds paid to Third-Party Defendants in order to preserve principles of equity and fairness.

(*Id.* at 14-15, ¶¶ 18-23).

As the factual basis for the third-party claims, DTI alleges:

> 6.  Dr. Julian Davidson was a participant in the Plan, and his wife,

---

[3] DTI originally sought to assert third-party claims against Lisa Binns as well as against Tammy Cason and Kim Palmer.  (Doc. 62, at 6-11).  However, DTI later acknowledged Binns returned all of the contested funds (Doc. 67, at 8), and it limited its proposed third-party claims to Cason and Palmer. (*Id.* at 11-15).

Dorothy Davidson, was the beneficiary of his retirement account under the Plan.

7.   When Dr. Davidson died, the funds in his retirement account passed to Mrs. Davidson and were deposited in an account under her name . . . (the "Beneficiary Account").

8.   Mrs. Davidson was also a participant in the Plan with her own separate retirement account . . . ("the Participant Account").

9.   The Third-Party Defendants were the designated beneficiaries on the Participant Account.

10.   No beneficiary was designated for the Beneficiary Account; therefore, under the terms of the Plan, Mrs. Davidson's Estate was the default beneficiary.

11.   Mrs. Davidson died on May 11, 2021.

12.   Effective September 21, 2021, the funds from the Participant Account were moved to accounts for the Third-Party Defendants.

13.   Effective October 27, 2021, the funds from the Beneficiary Account were also moved to the Third-Party Defendants' accounts.

14.   On June 29, 2022, letters were sent to Third-Party Defendants explaining that they had been overpaid and that the overpaid funds had to be returned.

15.   Further letters seeking return of the overpayment were sent to Third-Party Defendants in September and November 2022.

16.   Third-Party Defendants have failed or refused to return the remaining overpaid funds from the Beneficiary Account.

17.   In this action, filed November 21, 2023, Plaintiff Rebekah Keith McKinney, in her capacity as Personal Representative of the Estate of Dorothy Carolyn Smith Davidson, alleges that, under the terms of the Plan, the funds in the Participant Account were properly paid to the

Third-Party Defendants but that the funds in the Beneficiary Account should have been paid to the Estate. Plaintiff contests the distribution of those funds to Third-Party Defendants and seeks payment of the funds from Davidson and Principal Life.

(*Id.* at 12-13, ¶¶ 6-17).

DTI asserts independent subject matter jurisdiction exists over its third-party claims, as those claims arise under a federal statute. (*Id.* at 12, ¶ 4; *see also* 28 U.S.C. § 1331). In addition, DTI asserts supplemental jurisdiction exists over the third-party claims, as they "form part of the same case or controversy as those claims asserted by Plaintiff in the underlying action." (Doc. 67, at 12, ¶ 4).

## DISCUSSION

Federal Rule of Civil Procedure 14 governs third-party pleading procedure, also known as impleader. It states, in pertinent part:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

Fed. R. Civ. P. 14(a)(1).

"When the defendant's right against the third party is merely an outgrowth of the same core of facts which determines the plaintiff's claim, impleader is properly used to reduce litigation by having one lawsuit do the work of two." *Gen. Star Indem. Co. v. Triumph Hous. Mgmt., LLC*, 855 F. App'x 599, 603 (11ᵗʰ Cir. 2021) (cleaned up) (citing

*United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir. 1967)).[4] "Impleader is only available, however, when 'the third party defendant's liability is secondary to, or a derivative of, the original defendant's liability on the original plaintiff's claim.'" *Id.* (citing *Faser v. Sears, Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir. 1982); *Joe Grasso & Son, Inc.*, 380 F.2d at 751); *see also Martco Ltd. P'ship v. Bruks Inc.*, 430 F. App'x 332, 334-35 (5th Cir. 2011) ("'The secondary or derivative liability notion is central and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory.'" (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1446, at 415–21 (3d ed. 2010))). Thus, "the nonparty's liability on the third-party plaintiff's claim must be 'in some way dependent upon the outcome of the main claim.'" *Produce Pay, Inc. v. Agrosale, Inc.*, 533 F. Supp. 3d 1140, 1144 (S.D. Fla. 2021) (citing *U.S. v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987)).

A district court enjoys wide discretion in its assessment of a proposed, third-party complaint under Rule 14. *See Wilson v. Doss*, No. 2:09-CV-21-MEF, 2012 WL 5468448, at *2 (M.D. Ala. Nov. 9, 2012) (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1443 (3rd ed 2010); *Southern. Ry. Co. v. Fox,* 339 F.2d 560, 563-64 (5th Cir. 1964)) ("Although the Court recognizes the

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981,

liberal spirit of Rule 14, it is also aware that 'whether a third-party defendant may be impleaded under Rule 14 continues to be a question addressed to the sound discretion of the trial court.'").

The decision in *Smith v. Union Nat'l Life Ins. Co.*, No. 1:15-CV-9-KS-RHW, 2016 WL 7665910 (S.D. Miss. Feb. 24, 2016), presents a persuasive, analogous case for the circumstances at bar. In *Smith*, the plaintiff sued the defendant life insurance company for its failure to pay her benefits on a life insurance policy. During the proceedings, the life insurance company, Union National, moved to file an amended complaint impleading several third-party defendants to whom, it alleged, it had properly paid the benefits. The court cognized impleaded claims "'must, in some way, derive from and be conditional upon a finding that the original defendant is liable to the original plaintiff.'" *Id.* at *2 (citation omitted). Resultingly, the court ruled "the liability of the Third-Party Defendants is derived from and conditional to Union National's liability to Plaintiff," and thus, it allowed Union National to proceed with its third-party complaint. *Id.*

The same rationale ensues in this case. Cason and Palmer may bear liability for all or part of Plaintiff's claims against DTI because DTI may have wrongfully distributed the Beneficiary Account funds to them. Plaintiff avers viable §§ 1132(a)(1)(B) and 1132(a)(3) claims. If the court ultimately holds DTI liable for those claims and requires DTI to compensate the Estate for wrongfully paying the Beneficiary

Account funds to Cason and Palmer, DTI may seek reimbursement from Cason and Palmer in a separate action.  If the court does not hold DTI liable for breach of fiduciary duty, DTI will not need to seek reimbursement from Cason and Palmer.  Therefore, Cason and Palmer's liability to DTI will 'derive from and be conditional upon' the outcome of Plaintiff's claim against DTI.  *See Gen. Star Indem. Co.*, 855 F. App'x at 603; *Produce Pay, Inc.*, 533 F. Supp. 3d at 1144; *Smith*, 2016 WL 7665910, at *2.[5]

     In employing the discretion afforded by Rule 14, district courts within the Eleventh Circuit also consider factors commensurate with a discretionary undertaking:

> (1) whether the third-party claims will prejudice the plaintiff; (2) the risk of unduly complicating the issues or unnecessarily delaying resolution of the case; (3) the timeliness of the motion; (4) the additional expense the parties may incur on account of the claim; and (5) whether the claim has merit.

*Ctr. for Biological Diversity v. Haaland*, No. 23-CV-20495-PAS, 2023 WL 6794501, at *2 (S.D. Fla. Oct. 13, 2023) (citing *Edelsberg v. Brea Fin. Group, LLC*, No. 18-CV-62119, 2019 WL 13067432, at *2 (S.D. Fla. Mar. 14, 2019) (Dimitrouleas, J.)); *see also Colonial Pipeline Co. v. AIG Specialty Ins. Co.*, No. 1:19-CV-00762, 2019 WL 9607651, at *1 (N.D. Ga. Aug. 5, 2019) (citations omitted) ("Courts consider the prejudice placed on other parties, undue delay by the third-party plaintiff, lack of substance to the third-party

---

[5] The same results would ensue if the court held Principal liable to Plaintiff.  However, the court's discussion focuses upon DTI because only DTI seeks leave to file a third-party complaint.

claim, and avoiding duplicative suits on closely related issues when deciding whether to allow a third-party complaint."); *Hobbs v. Salem Holding Co.*, No. CV-420-151, 2020 WL 6834230, at *2 (S.D. Ga. Nov. 3, 2020), *on reconsideration in part*, No. CV-420-151, 2020 WL 6829858 (S.D. Ga. Nov. 20, 2020) (citations omitted) ("'Factors appropriately considered in deciding such a motion include: (1) whether the movant unreasonably delayed in bringing the motion; (2) whether impleading the new party would delay or unduly complicate the action; (3) whether impleading the new party would prejudice the new or non-moving party; and (4) the merit of the underlying claim.'").[6]

---

[6] DTI cites *Wilson v. Doss*, No. 2:09-CV-21-MEF, 2012 WL 5468448 (M.D. Ala. Nov. 9, 2012), which considered the following factors: "(1) prejudice to the parties; (2) the status of discovery; (3) the defending party's delay in seeking leave to file a third-party complaint; (4) judicial economy or efficiency; (5) avoidance of delay in the underlying trial; and (6) whether discovery favors separate trials." *Id.* at *2 (citing *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.,* 237 F.R.D. 679, 681-82 (N.D. Okla. 2006)). Though most of those factors mirror the ones enumerated in the cases cited in text, *Wilson* omits consideration of the merits of the underlying claim. This court considers that factor essential, as it supports Rule 14's requirement that the third-party defendant be "be liable to [the third-party plaintiff] for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). If the proposed claims against the third-party defendant lack merit, the third-party defendant will hold no liability to the third-party plaintiff. *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1446 (3rd ed 2010) ("Impleader also is proper only when a right to relief exists under the applicable substantive law; if it does not, the impleader claim must be dismissed."); *id.* § 1451 ("It should be remembered, however, that there must be a substantive right to relief that will accrue to the third-party plaintiff under the applicable law. When there is no possibility of a right coming into existence, impleader is improper."); *Serrano v. A Plus Painting, LLC*, No. 2:15-CV-30-FTM-38MRM, 2015 WL 13805066, at *1 (M.D. Fla. July 17, 2015) (considering whether "the claims Defendant seeks to add in its . . . Third-Party Complaint are futile"); *Republic-Franklin Ins. Co. v. Sec. Pros., Inc.*, No. CV-407-060, 2007 WL 9706828, at *1 (S.D. Ga. Oct. 17, 2007) (citations omitted) ("The Court agrees that it is appropriate to consider whether the defendant's claim against Fred Williams is futile before granting leave to implead under Rule 14."); *Smith v. Orsus Grp., Inc.*, No. 23-CV-13201, 2024 WL 4653636, at *2 (E.D. Mich. Nov. 1, 2024) (citing *Tate v. Frey*, 735 F.2d 986, 989 (6th Cir. 1984)) ("'[A]n

Applying the discretionary factors also supports allowing DTI's third-party complaint.[7]

_Merits of the proposed third-party claim_

As discussed, the proposed third-party complaint asserts a claim for restitution and unjust enrichment pursuant to 29 U.S.C. § 1132(a)(3), as the Estate, not Cason and Palmer, allegedly should have received the proceeds of the Beneficiary Account, and Cason and Palmer cannot fairly and equitably retain those funds. DTI alternatively requests the court to impose "an equitable lien and/or constructive trust" on the funds Cason and Palmer received. (Doc. 62, at 10, ¶ 25).

Title 29 U.S.C. § 1132(a)(3) permits a civil action

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

To maintain viability under § 1132(a)(3), the claim must request an equitable, rather than legal, remedy. _See Great-W. Life & Annuity Ins. Co. v. Knudson_, 534 U.S. 204, 221 (2002) (Section 1132(a)(3), "by its terms, only allows for _equitable_ relief.") (emphasis

---

impleader action is proper when there is a right to relief in the third-party plaintiff under applicable substantive law against the third-party defendant.'") (alteration in original).

[7] As various district courts have considered different factors, the court will present a comprehensive analysis of all relevant factors.

in original). "[T]he term 'equitable relief' in § [1132(a)(3)] is limited to 'those categories of relief that were *typically* available in equity' during the days of the divided bench (meaning, the period before 1938 when courts of law and equity were separate)." *Montanile v. Bd. of Trs. of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016) (quoting *Mertens v. Hewitt Associates,* 508 U.S. 248, 256 (1993)) (emphasis in original).

DTI's proposed Third-Party Complaint asserts a "Restitution and Unjust Enrichment" claim. (Doc. 67, at 14). As a remedy for the alleged restitution and unjust enrichment, DTI seeks return of funds from the proposed third-party Defendants, or alternatively, an equitable lien and/or constructive trust upon the funds received by them. (*Id.* at 15). The request for a return of funds likely constitutes an entreaty for a legal remedy, whereas the alternative request for an equitable lien and/or constructive trust represents a request for equitable remedies.

The Alabama Supreme Court described the constructive trust equitable remedy in *Am. Family Care, Inc. v. Irwin*, 571 So. 2d 1053 (Ala. 1990):

> Equity may impress a constructive trust on property in favor of one beneficially entitled thereto when another holds title to the property by fraud, commission of wrong, abuse of a confidential relationship, or any other form of unconscionable conduct. Keeton, *Law of Trusts*, 210 (5th ed. 1949); 4 Pomeroy, *Equity Jurisprudence*, § 1053 (5th ed. 1941); *Walsh on Equity*, § 106 (1930).

> Equity may also impress a constructive trust on property in favor of one beneficially entitled thereto against a person, who, against the rules of equity and against good conscience, in any way either has obtained or holds and enjoys legal title to property that in justice that person ought

12

not to hold and enjoy.  3 Scott on Trusts § 462.1 (1939); Restatement
(Restitution) § 160, Comment A (1937).

*Id.* at 1058.

As for the equitable lien remedy,

it is very similar to a constructive trust since both may be imposed where
there is clear and convincing evidence that such imposition is justified to
prevent unjust enrichment.  However, whereas the beneficiary of a
constructive trust receives title to the trust property, a person who receives
an equitable lien merely obtains a security interest in the property held by
another.

Tilley's Alabama Equity § 22:1 (6th ed.).

In general, though, liability in restitution lies against a defendant obtaining unjust

enrichment.  Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011).  A

claim for restitution may present a request for equitable relief, but only if the nature of

the claim and the underlying remedies sounds in equity, not law.  *Knudson,* 534 U.S. at

212-13.  Such requests would traditionally sound

*in equity,* ordinarily in the form of a constructive trust or an equitable lien,
where money or property identified as belonging in good conscience to
the plaintiff could clearly be traced to particular funds or property in the
defendant's possession. *See* [1 D. Dobbs, Law of Remedies] § 4.3(1), at
587-588[ (2d ed. 1993)]; Restatement of Restitution, *supra,* § 160,
Comment *a,* at 641-642; 1 G. Palmer, Law of Restitution § 1.4, p. 17; §
3.7, p. 262 (1978).  A court of equity could then order a defendant to
transfer title (in the case of the constructive trust) or to give a security
interest (in the case of the equitable lien) to a plaintiff who was, in the
eyes of equity, the true owner. But where "the property [sought to be
recovered] or its proceeds have been dissipated so that no product
remains, [the plaintiff's] claim is only that of a general creditor," and the
plaintiff "cannot enforce a constructive trust of or an equitable lien upon

13

> other property of the [defendant]." Restatement of Restitution, *supra,* §
> 215, Comment *a,* at 867. Thus, for restitution to lie in equity, the action
> generally must seek not to impose personal liability on the defendant, but
> to restore to the plaintiff particular funds or property in the defendant's
> possession.

*Knudson*, 534 U.S. at 213-14 (alterations and emphasis in original); *see also Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 502 (4th Cir. 2023), *cert. denied,* 144 S. Ct. 1346, 218 L. Ed. 2d 423 (2024) ("A plaintiff alleging unjust enrichment can get a monetary remedy under ERISA only if she seeks specific funds that are wrongfully in the defendant's possession and rightfully belong to her.  Courts cannot award her relief that amounts to personal liability paid from the defendant's general assets to make the plaintiff whole.").

In *Knudson*, the defendants did not possess the funds to which the plaintiffs claimed entitlement; rather, part of those funds rested in a Special Needs Trust, and defendants' attorneys distributed the remainder of the funds to defendants' creditors. *Knudson*, 534 U.S. at 214.  The plaintiffs sought contractual entitlement "to *some* funds for benefits that they conferred"; they did not claim the defendants "h[e]ld particular funds that, in good conscience, belong to" the plaintiffs.  *Id.*  (emphasis in original). Therefore, the plaintiffs sought a legal remedy, "the imposition of personal liability for the benefits that they conferred upon" the defendants, not an equitable "imposition of a constructive trust or equitable lien on particular property."  *Id.*

In contrast, in *Montanile v. Bd. of Trs. of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136 (2016), the defendant received settlement funds from an automobile accident,

14

and his ERISA-covered health insurance plan sought to enforce an equitable lien on those funds pursuant to 29 U.S.C. § 1132(a)(3), as reimbursement for accident-related medical expenses. *Id.* at 140-41. Though, as discussed subsequently, issues arose due to the plaintiff's dissipation of the settlement funds he received, the Supreme Court characterized the basis for the plaintiff's request as equitable in nature because the plaintiff "had an equitable lien by agreement that attached to [the plaintiff's] settlement fund when he obtained title to that fund." *Id.* at 142, 144.

Albeit ambiguous, DTI's request for a "return of funds" appears to represent a claim seeking a "judgment for money in the amount of the defendant's enrichment at the claimant's expense," whereas the constructive trust and equitable lien remedies "are traditionally known as the equitable remedies in restitution . . . permitting the claimant to obtain restitution via rights in specifically identifiable property in the hands of the defendant." Restatement (Third) of Restitution and Unjust Enrichment, Pt. III, Ch. 7, Intro. Note (2011). There exists no need to resolve the ambiguity at this stage, as DTI's request for a "return of funds" may simply reflect an alternative specification for an equitable lien or a constructive trust, and, as implied, the remedies result in the same conclusion because maintenance of an equitable lien or constructive trust results in a return of funds.

Cason and Palmer directly received the Beneficiary Account proceeds, and the proposed third-party complaint seeks repayment of those funds. It does not seek to

generally impose personal liability on Cason and Palmer.  (*See* Doc. 67, at 14, ¶¶ 20 (alleging the Third-Party Defendants "are not entitled to retain the funds paid to them from the Beneficiary Account"), 21 (alleging unjust enrichment "in the amounts [each Third-Party Defendant] received from the Beneficiary Account but has not returned"), 22 (seeking restitution "of those funds paid to" the Third-Party Defendants), 23 (requesting "an equitable lien and/or constructive trust . . . be imposed upon the funds paid to [the] Third-Party Defendants")).  Therefore, DTI's third-party complaint seeks equitable relief for its restitution/unjust enrichment claim, principally an equitable lien and/or constructive trust.

Plaintiff argues the proposed third-party complaint fails to present viable equitable claims because it does not "allege that the subject funds are sequestered in an identifiable account or fund and also fails to allege that the nieces still have possession of those funds."  (Doc. 65, at 4).  Plaintiff misconstrues the nature of the tracing instrument.

Tracing permits "a claimant with a right to restitution from identifiable property to 'trace' or 'follow' that property, not only through successive transfers but through successive changes of form."  Restatement (Third) of Restitution and Unjust Enrichment § 58 (2011).  "Tracing is neither a source of liability nor a distinct restitutionary remedy. Rather, tracing is an adjunct remedial device or technique, supplementing the remedies that permit restitution from property [such as funds subject

16

to a constructive trust or an equitable lien] as opposed to restitution via money judgment." *Id.*

In particular, "[t]racing . . . permit[s] the equity court to . . . follow . . . property into its new forms and attach an equitable interest in that new form," including property "co-mingled with the property of others."  James M. Fischer, *Understanding Remedies* §§ 59.1 & 59.2 (2d ed. 2006) (citing *National Bank v. Insurance Co.*, 104 U.S. 54, 69 (1881) (stating that "equity will follow the money even if it is put into a bag or an undistinguishable mass, by taking out the same quantity")).  Based upon tracing principles, the constructive trust and equitable lien remedies permit recoupment of property transacted and exchanged for other property:

> For example, if the defendant stole a car, the rightful owner could replevin it at law.  If, however, the defendant exchanged the stolen car for a motorcycle, the owner could not replevin the motorcycle.  However, when, as here, the owner could trace his property into the new and different property (the motorcycle), he could claim an equitable interest in that property.  Tracing could be further extended as, for example, if the defendant sold the motorcycle for cash.  To prevent the defendant's unjust enrichment and profiting from his own misconduct, equity characterized the defendant as an "involuntary trustee."  In other words, the defendant held only bare legal title to the property in his possession.  The remedy of a constructive trust would be imposed and the defendant-constructive trustee would be directed to return the property to the holder of the beneficial, equitable interest (the plaintiff).

Fischer, *supra*, at § 59.2 (notes and citations omitted); *see also* Restatement (Third) of Restitution and Unjust Enrichment § 59 (2011) ("If property of the claimant is deposited in a common account or otherwise commingled with other property so that

it is no longer separately identifiable, the traceable product of the claimant's property may be identified in (a) the balance of the commingled fund or a portion thereof, or (b) property acquired with withdrawals from the commingled fund, or a portion thereof, or (c) a combination of the foregoing . . . .").

Indeed, as declared previously, tracing principles apply to misappropriated funds commingled with personal funds, as described in circumstances regarding misappropriated trust funds:

> In the case of trust moneys commingled by the trustee with his own moneys, . . . equity . . . determined that the whole mass of money with which the trust funds were commingled should be treated as a trust. And if the trustee deposited the trust funds with his own funds . . ., he was presumed to have drawn out his own funds first, and that the remaining funds belonged to the trust. It is not to be presumed that the trustee would commit a wrong and use the trust funds when he had moneys of his own idle in the bank. . . . It was [thus] held that if money be received by a person in a fiduciary character, though not as a technical trustee, and he pays it into his own account in bank, the person for whom he received the money might follow it and have a charge on the balance in the bank as shown by the account.

*Hicks v. State*, 635 N.E. 2d 1151, 1156 (Ind. App. 1994) (alteration in original, citations and quotation marks omitted), *cited in* Fischer, *supra*, at § 59.1.[8]

---

[8] *See also Paoloni v. Goldstein*, 331 F. Supp. 2d 1310 (D. Colo. 2004):

> A constructive trust is an equitable device used to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs. . . . This equitable remedy may be imposed when property has been acquired in such circumstances that the holder of legal title may not in equity and good conscience retain the beneficial interest. . . . The beneficiary of a constructive trust may obtain, through tracing, not merely what was lost but also other property or profits traceable

Based upon the foregoing principles, DTI's third-party complaint did not need to identify a bank account or other specific location where Cason and Palmer separately retain the funds it received from the Beneficiary Account. DTI need only demonstrate that Cason and Palmer received specific funds, and it has done so by stating those individuals received the proceeds of the Beneficiary Account. *See Culp, Inc. v. Cain*, 414 F. Supp. 2d 1118, 1128 (M.D. Ala. 2006) ("The case at bar differs from *Knudson* in one crucial respect: whereas the settlement in *Knudson* was never in the possession of the defendant, the settlement in Cain's case was paid directly to Cain or her lawyers (on her behalf)."). The tracing of those funds, if warranted, would occur via discovery and other appropriate mechanisms.

The cases Plaintiff cites to support the proposition that DTI must allege Cason and Palmer have sequestered the subject funds in an identifiable account or fund constitute only persuasive authority from other district courts, and they do not persuade this court.

Plaintiff first cites *Jette v. United of Omaha Life Ins. Co.*, 387 F. Supp. 3d 149 (D. Mass. 2019). In *Jette*, the plaintiff received long-term disability benefits pursuant to an

---

to that lost property. . . . The party holding the subject property need not have performed a wrongful act for a constructive trust to be imposed, and such trusts have been imposed in a wide variety of cases in which equity dictated this remedy. . . . The purpose of the constructive trust is to prevent the defendant from being unjustly enriched at the plaintiff's expense.

*Id.* at 1313 (citations omitted).

ERISA-covered plan that granted the plan administrator the right to seek a refund from its participants in the event of an overpayment. The term overpayment included a participant's receipt of income from other sources. The plaintiff subsequently began receiving Social Security Disability Income benefits, allegedly resulting in an overpayment for which the plan administrator sought reimbursement through a counterclaim under § 1132(a)(3). *Id.* at 151-52. The district court characterized the nature of the counterclaim as equitable, as it did "not seek to impose personal liability upon [the Plaintiff] but rather reimbursement of particular funds or property, namely, overpaid long-term disability benefits paid under the Plan" in the form of "a constructive trust or . . . equitable lien over the overpayment." *Id.* at 156. The court explicitly rejected the plaintiff's argument "that the fund must be entirely separate from anything else, *i.e.*, some type of stand-alone fund," as "not supported by the caselaw." *Id.* Even so, as the defendant/counterclaim-plaintiff did not allege Jette retained possession of the funds, and it reported it lacked sufficient facts to render such allegations, the court denied the plaintiff/counterclaim-defendant's motion to dismiss the counterclaim without prejudice to the right to amend the answer to add counterclaims after limited discovery on the issue of possession of the funds. *Id.*

*Jette* contradicts Plaintiff's argument that DTI must depict Cason and Palmer sequestered the Beneficiary Account proceeds in an identifiable account or fund. And, it supports the court's conclusion that DTI's third-party claim, which seeks

reimbursement of the Beneficiary Account proceeds via an equitable lien or constructive trust, presents an equitable claim.

Plaintiff also cites *Stephens v. Time Customer Serv., Inc.*, No. 8:17-CV-1338-T-33AEP, 2017 WL 4792180 (M.D. Fla. Oct. 24, 2017), as a case that dismissed an "ERISA plan's counterclaim for failure to plead the existence of a specific and identifiable fund in [the] beneficiary's possession." (Doc. 65, at 5). That summary presents an inaccurate characterization, as the court in *Stephens* dismissed the § 1132(a)(3) counterclaim without prejudice and with leave to amend. *Stephens*, 2017 WL 4792180, at *6. Though the counterclaim-plaintiffs argued they identified specific funds for which they sought restitution, the counterclaim confusingly also requested compensatory damages "rather than restitution of the specific funds paid to" the counterclaim-defendant. *Id.* As the pleading did "not explicitly specify that the [counterclaim-plaintiffs] wish to recoup only the funds paid to [the counterclaim-defendant] and only through traditional equitable means," the court granted leave to amend the counterclaim "in order to plead 'a claim for equitable restitution under ERISA seeking a constructive trust or equitable lien be imposed upon the portion of the specific and identifiable severance payment fund in [the counterclaim-defendant's] possession.'" *Id.*

As the third-party complaint in this case invokes no confusion as to the nature or source of the funds for which DTI seeks restitution, and DTI has already sought a

constructive trust or equitable lien pursuant to ERISA, *Stephens* holds little persuasive value.

Finally, Plaintiff cites *Trechak v. Seton Co. Supplemental Exec. Ret. Plan*, No. 10-0227, 2010 WL 5071273 (E.D. Pa. Nov. 24, 2010), as a case that dismissed an "ERISA equitable restitution claim for failing to identify any fund or account in plaintiff's possession." (Doc. 65, at 5). The plaintiff asserted a § 1132(a)(3) claim against individual defendants who served as the CEO and President of his former employer. *Trechak,* 2010 WL 5071273, at *1-2. As the plaintiff did not "identif[y] any money or property in [the individual defendants'] possession for purposes of pleading a claim of equitable restitution or other appropriate equitable relief against him," the court dismissed the claims against both individual defendants with leave to amend, "assuming Plaintiff can state adequate facts leading to personal liability." *Id.* at *7.

DTI cannot rely upon *Trechak* for its entreaty. The applicable *Trechak* holding proceeds on the understanding that the individual defendants received no funds from the plans at issue: the plans curtailed the plaintiff's deferred compensation benefits "due to 'difficult business conditions,'" *id.* at *1, not because it deposited any requisite funds into the individual defendants' accounts. Therefore, the plaintiff could not sustain his equitable claim because he could not identify any funds possessed by the individual defendants, not because he failed to identify specific funds sequestered by those individuals.

22

As alluded to previously, even if a § 1132(a)(3) claim is equitable in nature, it may not warrant an equitable remedy if the alleged wrongful recipient of ERISA funds has dissipated those funds. In *Montanile*, the Supreme Court stated that

> at equity, a plaintiff ordinarily could not enforce any type of equitable lien if the defendant once possessed a separate, identifiable fund to which the lien attached, but then dissipated it all. The plaintiff could not attach the defendant's general assets instead because those assets were not part of the specific thing to which the lien attached.

*Montanile*, 577 U.S. at 146. As the record did not clearly depict whether the recipient of the funds dissipated them entirely on nontraceable assets, the Supreme Court remanded for the district court to render factual findings on that subject. *Id.* at 151. *See also Manuel v. Turner Indus. Grp., L.L.C.*, 905 F.3d 859, 874 (5th Cir. 2018) (remanding for a determination of whether the plaintiff "'kept his [ERISA] benefits separate from his general assets or dissipated the entire [amount] on nontraceable assets.'") (second alteration in original).

To the extent Plaintiff argues Cason and/or Palmer received the Beneficiary Account proceeds but already dissipated them, the court record contains no evidence, or even an allegation, of dissipation. To the contrary, the proposed third-party complaint alleges Cason and Palmer retain the Beneficiary Account proceeds. (Doc. 67, at 14, ¶ 20 ("Third-Party Defendants are not entitled to retain the funds paid to them from the Beneficiary Account, . . . and their acceptance and retention of those funds would violate established principles of fairness and equity.")). If evidence later

arises that dissipation has occurred, the court may revisit the question whether the third-party complaint presents an equitable claim pursuant to § 1132(a)(2). However, mere speculation that Cason or Palmer may have dissipated the funds does not render futile the § 1132(a)(2) claim alleged in the proposed third-party complaint. *C.f.*, *Patterson v. United HealthCare Ins. Co.*, 76 F.4th 487, 498 (6th Cir. 2023) ("It may turn out . . . that Optum's handling of the $25,000 has placed it beyond § 1132(a)(3)'s reach. If in the end Optum spent the $25,000 on nontraceable items or transferred it to the plan, as two examples, Patterson can no longer invoke disgorgement and equitable restitution. . . . For now, though, Patterson has made out a colorable equitable claim.").

*Undue delay/timeliness*

More than five months passed between DTI's September 13, 2024, answer and its February 24, 2025, motion for leave to file a third-party complaint, and thus, DTI has sought court approval to implead the Third-Party Defendants. *See* Fed. R. Civ. P. 14(a)(1) ("[T]he third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer."). Even so, DTI sought leave to file the third-party complaint only approximately one month after January 23, 2025, when the court ruled on Principal's motion to dismiss, and only eleven days after February 13, 2025, when Principal filed an answer. The scheduling order deadline for adding parties and amending pleadings does not expire until 30 days after the close of discovery on August 11, 2025.

Thus, even though some delay has occurred, DTI has not engaged in undue delay.  *See Colonial Pipeline Co.*, 2019 WL 9607651, at *3 ("Defendant filed its third-party complaint shortly after the start of discovery without engaging in undue delay."); *Edelsberg*, 2019 WL 13067432, at *2 (considering motion to file a third-party complaint timely when filed approximately four months after the defendant's answer but before the court ruled on a motion to dismiss).

Plaintiff argues DTI and Principal knew Mrs. Davidson's nieces wrongfully received the Beneficiary Account proceeds by March 2022, "yet waited almost three years to bring a claim for the funds."  (Doc. 65, at 5, ¶ 4).  However, that argument overlooks that Plaintiff also could have, but did not, seek to recover the funds from the nieces.  Moreover, Plaintiff did not name DTI as a Defendant to this action until May 16, 2024, and she did not present DTI with a waiver of service until July 15, 2024.  Presenting DTI with the option to waive service extended DTI's answer period from 21 days to 60 days.  *See* Fed. R. Civ. P. 12(a)(1)(A).

Similarly, allowing the third-party complaint will not unduly delay these proceedings.  As discussed, the deadline for adding parties has not expired, discovery only recently commenced, the discovery deadline does not expire until August 11, 2025,[9] and the court has not yet set a trial date.

---

[9] In any event, the third-party claims against Cason and Palmer may not involve extensive discovery.

_Judicial efficiency_

In assessing a Rule 14 motion, other courts have considered such factors as "the risk of unduly complicating the issues or unnecessarily delaying resolution of the case," "the additional expense the parties may incur on account of the claim," _Haaland_, 2023 WL 6794501, at *2, and "avoiding duplicative suits on closely related issues," _Colonial Pipeline Co._, 2019 WL 9607651, at *1.  Those factors encompass the need to promote judicial efficiency.

As discussed, allowing the proposed third-party complaint will not unduly delay resolution of the case, and for similar reasons, it will not result in significant, additional expense or complicate the issues.  If Plaintiff prevails in this case against Principal and/or DTI, the entity held liable may seek to recover from Cason and Palmer in a separate proceeding.  Joining Cason and Palmer to the present action will allow one court to resolve all issues, promoting efficiency and likely resulting in a cost savings compared to separately litigating the claims.[10]  _See_ 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1443 (3rd ed. 2010) ("The mere enlargement of the time required for the trial of the case is not itself adequate to cause dismissal of the third-party action, since it probably is offset by the savings

---

[10] As both Principal and DTI point out, failing to join Cason and Palmer to this action may only render the Estate's recovery of the Beneficiary Account funds more difficult.  (_See_ Doc. 66, at 3, ¶ 5) ("Keeping [the nieces] out of this case only makes it more difficult to ensure that the Estate receives [the Beneficiary Account] funds."); Doc. 67, at 4 (same)).

achieved by avoiding a second action.").

   *Prejudice*

   Plaintiff will suffer no prejudice if the court grants DTI leave to file a third-party complaint against Cason and Palmer.  Plaintiff's claims in this case seek to recover the proceeds of the Beneficiary Account on behalf of the Estate.  (Doc. 35, ¶¶ 38-40).  The proposed third-party claims will assist in that effort, as Cason and Palmer currently possess the funds Plaintiff seeks to recover.  Indeed, the proposed third-party complaint also seeks recovery of the Beneficiary Account funds to the Estate, indicating the interests served by Plaintiff's Complaint and DTI's proposed third-party complaint align rather than conflict.  (*See* Doc. 67, at 15, ¶ 22 ("Third-Party Defendants should be required to pay those funds to the Estate, either directly or through reimbursement or restitution to the Plan.")).

   Plaintiff argues she will suffer prejudice because "[a]dding the nieces and litigating whether they are legally subject to DTI's claims will further delay these proceedings and McKinney's efforts to have the Estate paid money **that no one disputes should be paid to the Estate.**"  (Doc. 65, at 7, ¶ 6 (emphasis in original)).  However, as discussed, little if any delay will result from allowing the third-party complaint, and the benefit gained from joining the parties who currently possess the contested funds will outweigh any slight delay.

   Plaintiff has acknowledged Mrs. Davidson's nieces, including Cason and Palmer,

27

constitute residual beneficiaries of the Estate.  (Doc. 65, at 1, ¶ 1).  Thus, as both Defendants point out, Cason and Palmer stand to reap a double recovery if the Estate recovers from Principal and/or DTI via its claims in this case and the nieces retain the Beneficiary Account funds they already received.  (*See* Doc. 66, at 3, ¶ 6 ("If the nieces do not return the funds they undisputedly were not entitled to and Plaintiff obtains additional funds from the Plan under this action, the Estate and the nieces will be double compensated at the expense of the Plan."); Doc. 67, at 4 n. 12 ("By keeping the nieces out of this case, it appears that McKinney seeks to facilitate the nieces recovering double from Principal and DTI. . . .  If the nieces do not return the funds they undisputedly were not entitled to and the estate obtains additional funds from the Plan, the estate and ultimately the nieces will be double compensated at the expense of the Plan.").  Such a result may actually benefit the Estate, Cason, and Palmer, while prejudicing DTI and Principal.

In summary, the relevant factors weigh in favor of allowing DTI to file a third-party complaint against Cason and Palmer.

## CONLCUSION AND ORDER

As discussed herein, the proposed third-party complaint satisfies the requirements of Federal Rule of Civil Procedure 14, and all relevant discretionary factors weigh in favor of allowing the third-party complaint.  Accordingly, the court **GRANTS** DTI's motion to file a third-party complaint.  The court **ORDERS** DTI to

file, within seven (7) days of this order, its third-party complaint against Tammy Cason and Kim Palmer, and subsequently, to serve the third-party complaint on Cason and Palmer.

 **DONE** and **ORDERED** this 8th day of May, 2025.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE